AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 18-80M
a Silver Apple iPhone X using phone number 443-877-7950, )
located at FBI Wilmington Resident Agency, located at 500 )
Delaware Avenue, Suite 300, Wilmington, Delaware, 19801 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

a Silver Apple iPhone X using phone number 443-877-7950, as more fully described in Attachment A

located in the _____ District of _____Delaware_____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861; 5872; 5845 | Possession of Unregistered Firearm |
| 18 U.S.C § 922 and 924 | Possession of a Firearm and Ammunition by a Prohibited Person |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Brian Lucas, TFO FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/25/2018

_____
Judge's signature

City and state: Wilmington, Delaware    Honorable Sherry R. Fallon, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>a Silver Apple iPhone X using phone number<br>443-877-7950, currently located at<br>FBI Wilmington Resident Agency<br>500 Delaware Avenue, Suite 300<br>Wilmington, DE 19801 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Lucas, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. The United States is investigating Shane MANTEGNA ("MANTEGNA") for being a felon in possession of a firearm, which respectively occurred in the Districts of Delaware. The investigation concerns possible violations of the National Firearms Registration and Transfer Record, 26 U.S.C. § 5861; 5872; 5845, and Person Prohibited from Possession Firearms and Firearm Ammunition, 18 U.S.C § 922 and 924 (collectively, "THE OFFENSES").

2. This affidavit is in support of a search warrant for a Silver in color Apple iPhone X cellular telephone using phone number 443-877-7590 (hereinafter "TARGET TELEPHONE"), as described in Attachment A, where there is probable cause to believe that the items listed in Attachment B—evidence of THE OFFENSES—will be found.

**AGENT BACKGROUND**

3. I am a duly sworn member of the New Castle County Police Department ("NCCPD") and have been employed as a police officer in the State of Delaware since November of 2002. I am currently assigned to the Federal Bureau of Investigation ("FBI") Violent Crime Safe Streets Task Force, Baltimore Division, Wilmington, Delaware Resident Agency, where I serve as a Task Force Officer ("TFO").

4. I graduated from the Wilmington Police Academy, Wilmington, Delaware in April of 2003. In addition, I have successfully completed training courses on drug enforcement and the investigation of violent crime sponsored by the Drug Enforcement Administration ("DEA"), the United States Department of Justice, the Delaware State Police ("DSP"), NCCPD and Maryland State Police. While employed by NCCPD, I have investigated criminal violations related to kidnapping, homicide, firearms offenses, drug trafficking, robbery and fugitives.

5. Since May of 2014, I have been assigned to the FBI's Violent Crime Safe Streets Task Force, which investigates violent crime, including violations of federal kidnapping, drug, and firearms statutes. In that role, I am responsible for investigations involving unlawful activities to include drug smuggling/trafficking, firearms offenses, and violent crime occurring in the District of Delaware.

6. I have participated in the investigation and prosecution of individuals involved in kidnapping and/or homicide. I have conducted physical and electronic surveillance, debriefed confidential sources, interviewed witnesses, analyzed telephone records, reviewed records, and reviewed tape recordings of conversations pertaining to homicide and kidnapping. I have participated in the preparation and execution of search warrants resulting in the seizure of DNA and other evidence in violent crime investigations. I am aware that individuals commonly use cellular telephones in furtherance of their criminal activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that individuals often speak in vague, guarded, or coded language when discussing their illegal activity in an effort to further prevent detection.

7. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United

States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

8.      The facts set forth in this affidavit are based upon my personal knowledge obtained during my participation in this investigation, review of documents, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a search warrant, this affidavit does not set forth each and every fact learned by me or other agents during the course of this investigation. The property to be searched is the TARGET TELEPHONE described in Attachment A, which was seized pursuant to this investigation on February 13, 2018, and is securely stored at the FBI Wilmington Resident Agency, located at 500 Delaware Avenue, Suite 300, Wilmington, Delaware, 19801. Attachment B details the items to be seized, which are believed evidence of THE OFFENSES; fruits of THE OFFENSES; or property designed for use, intended for use, or actually used in committing THE OFFENSES. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B

## PROBABLE CAUSE

9.      On Friday January 12, 2018 at 1638 hours, Officer Guarino and Master Corporal Pastuszak of the New Castle County Police Department were dispatched to 2204 Diamond Street, Wilmington, Delaware 19804, after Shane Mantegna ("MANTEGNA") called 911 and reported "having an issue with Microsoft" and making a statement about an Atom bomb being dropped. MANTEGA also told 911 that "we need to connect the dots or bad things are going to happen." According to 911 records, MANTEGNA called 911 from a cellular telephone using

3

phone number 443-877-7590.

10. When Officers Guarino and Pastuszak arrived an MANTENGA'S residence, Officer Pastuszak walked up the driveway while Officer Guarino responded to the front door, which was open but protected by a closed glass storm door. As Officer Pastuzsak walked past a black pick-up parked in the driveway, he looked in the passenger compartment and observed a red cylindrical object on the driver's seat. The object was approximately the same size as the cardboard tube in a standard roll of toilet paper and was painted red with the word "explosive" written on it in black ink. Officer Pastuzsak relayed to Officer Guarino that there was some type of explosive or firework on the front seat of the truck.

11. About this time, MANTEGNA exited his residence and began to speak with both officers. Both Officers Guarino and Pastuzsak report that MANTEGNA was acting "erratic" and had to be told several times to remove his hands from his pockets. MANTEGNA stated that he did not know what was going on, he was not "messing with it," and that his house was "turned around backwards." In an effort to ascertain exactly what was going on, Officers Guarino and Pastuzsak ordered MANTEGNA off the porch. MANTEGNA ignored the officers' commands to exit the porch; stating that he was "trying to prevent a nightmare," that "something was going on inside the house," and that "the couch had metal wires going through it." These statements led the officers to believe that there may possibly be some type of explosive device inside the residence and once again ordered MANTEGNA to exit the porch area. MANTEGNA ignored all commands to exit the porch, stated to officers he was not going to exit the porch, and began walking backwards towards the front door before turning around and attempting to enter the residence. Fearing that there may be an explosive device inside the residence, both Officers Guarino and Pastuzsak grabbed MANTEGNA'S arms. At this time, MANTEGNA began to

4

resist and was ultimately placed into handcuffs after Officer Guarino deployed his Conducted Electrical Weapon (CEW).

12. During a search of MANTEGNA'S person incident to arrest, Master Corporal Pastuzsak located a loaded handgun magazine in his pocket. The magazine contained 16 live 9mm rounds. Because the officers located what they believed to be explosives in the truck parked in the driveway and because the officers believed there might be explosives in the residence, they contacted the New Castle County Police Explosive Ordinance Disposal (EOD) Team.

13. Sergeant Snyder of EOD arrived on the scene and – due to a perceived imminent threat to the public – visually checked the residence for explosives with a canine trained to detect explosive material. No explosives were observed in the residence and the "explosives" observed in the truck were discovered to be M-5000 commercial grade fireworks.

14. Sergeant Snyder advised that while doing a visual inspection of the residence for explosives, he observed a short barreled AR15 style rifle in an open bag on a bed in the master bedroom. The rifle had a telescopic butt stock, a scope, and had a magazine inserted into it. Next to that open bag, there was also a black nylon pistol holster on the bed that contained a silver firearm.

15. An NCIC data base search revealed that on May 05, 2012, MANTEGNA was arrested by the Pennsylvania State Police for robbery and related charges. On March 25, 2013, MANTEGNA pled guilty to robbery – a felony in the state of Pennsylvania (Case number 1792508). This felony conviction makes MANTEGNA a person prohibited from possessing a firearm or firearm ammunitions.

16. Law enforcement then secured MANTEGNA'S residence and obtained a State of

5

Delaware Justice of the peace search warrant authorizing a further search 2204 Diamond Street, Wilmington DE 19804.

17. Pursuant to the search warrant, law enforcement seized the following items from MANTEGNA'S residence:

   a. One (1) AR15 rifle with a barrel approximately 8-10 inches in length. The rifle did not have any visible manufacturer's markings or a serial number.

   b. Four (4) magazines for the AR15 containing a total of 119 live rounds of .223 ammunition.

   c. One (1) silver Smith and Wesson SD9 9mm handgun with serial number FYN7361

   d. One (1) Nylon "Bulldog" brand 9mm handgun holster

   e. One (1) box of .223 ammunition, containing 20 rounds

   f. One (1) "drum" style AR15 magazine containing 100 live .223 rounds

18. All of the listed items seized from the residence were logged into New Castle County Police evidence.

19. MANTEGA was transported to Christiana Hospital, where he was admitted for a mental health evaluation prior to being relocated to Meadow Wood Behavioral Health Center.

20. On January 19, 2018, I obtained a federal complaint signed by Magistrate Judge Sherry R. Fallon, charging MANTEGNA with being a felon in possession of a firearm, in violation of 18 U.S.C § 922(g)(1).

21. On February 06, 2018, MANTEGNA was indicted by a federal grand jury, charging him with violating the National Firearms Registration and Transfer Act, in violation of 26 U.S.C §§ 5861(d), 5845(a)(3), (a)(7), and (c), and 5871; and Being a Felon in Possession of a

Firearm and Firearm Ammunition, in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(2).

22. During a review of the body cameras used by Officers Pastuzsak and Guarino during the initial arrest of MANTEGNA, I observed MANTEGNA holding the TARGET TELEPHONE in his hand during their confrontation. In fact, at one point, MANTENGNA removes the TARGET TELEPHONE from his pocket and tells the police officers that he was the one who called 911 and he can show them the phone call on his cellular telephone. When MANTENGA resisted arrest and begin to struggle with officers on the front porch of his residence, I could see on the video footage that MANTEGNA dropped the TARGET TELEPHONE in the bushes near the front porch. After the arrest, I spoke with all involved officers and discovered that MANTEGNA's phone had not been recovered.

23. On February 12, 2018, I contacted the owner of 2204 Diamond Street – Frank Schauber. At that time, Schauber advised that he was at the property early in the day and located a silver iPhone X in the bushes near the front porch. Schauber stated he did not know who the phone belonged to and believed it may have been stolen and thrown in the bushes on his property. I advised Schauber that the telephone was MANTEGNA'S and I would meet him and collect the phone. On February 13, 2018, I met with Schauber and collected the TARGET TELEPHONE. The phone is currently stored at the FBI Wilmington Resident Agency, located at 500 Delaware Avenue, Suite 300, Wilmington, Delaware, 19801.

24. In this case, MANTEGNA obtained two firearms and ammunition for those firearms even though he was a convicted felon. He could not legally purchase these items from a dealer. In my training and experience, subjects engaged in such criminal activities commonly use cellular telephones and other electronic devices in their activities. Moreover, information stored in electronic form can provide evidence of criminal activity and the identity of associates. For

example, numbers stored in the cellular telephones (such as caller ID lists reflecting recently received calls, contact lists, and logs of outgoing and incoming calls) can provide evidence of who the subject is calling and thus the identity of potential associates. Cellular telephones also contained stored voicemail messages. And cellular telephones can contain stored photographs and/or videos, which can include evidence of contraband, criminal activities, and criminal associates. Therefore, there is probable cause to believe that MANTEGNA used the TARGET TELEPHONE to obtain these items and that evidence of this activity is still on the TARGET TELEPHONE.

## **CONCLUSION**

25. Based on all of the foregoing information, there is probable cause to believe that on the TARGET TELEPHONE, there exists evidence, and/or instrumentalities of a violation of Title 18, United States Code, Sections 922 and 924 as well as Title 26, United States Code, Sections 5861, 5845, and 5871 as listed in Attachment B. By this affidavit and application, I request that the Court issue a search warrant the TARGET TELELPHONE, as described in

\* \* \* \* \*

8

Attachment A, and subsequently search the TARGET TELEPHONE, for the items listed in Attachment B.

Respectfully submitted,

_____
Brian Lucas
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on April 25, 2018.

_____
HONORABLE SHERRY R. FALON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF DELAWARE

9

Case 1:18-mj-00080-UNA   Document 1   Filed 04/25/18   Page 11 of 12 PageID #: 11

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

A silver in color Apple iPhone X using phone number 443-877-7950, currently located at the FBI Wilmington Resident Agency, located at 500 Delaware Avenue, Suite 300, Wilmington, Delaware, 19801.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

1. All records on the TARGET TELEPHONE described in Attachment A that relate to violations of Title 18, United States Code, Sections 922 and 924, as well as Title 26, United States Code, Sections 5861, 5845 and 5871 ("THE OFFENSES") from March 26, 2017, to present, regardless of the application used to create, store, or share same, including:

   a. Text messages and other electronic communications (including but not limited to MMS messages, SMS messages, FaceTime information, and Facebook messages) regarding violations of THE OFFENSES;

   b. contact lists and related identifying information;

   c. call logs; and

   d. location information.

2. Evidence of user attribution showing who used, controlled, or owned the TARGET TELEPHONE at the time the things described in this warrant were created, edited, or deleted; such as logs, phonebooks, saved usernames and passwords, documents, communications, audio files, video files, social media accounts and posts, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.